UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| KRISHA SMITH, | : | |
|---|---|---|
| | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | |
| | : | Civil No. 17-5565 |
| v. | : | |
| | : | |
| KENNETH FOWLKES, MICHAEL PEREZ, AND JACK KLUK, | : | OPINION |
| | : | |
| Defendants. | : | |

This matter comes before the Court on Motion for Summary Judgment of Defendant Jack Kluk as to the claims against him as plead in the Third Amended Complaint, which was filed on December 18, 2017. The Court has considered the written submissions of the parties, including the video submission, and the arguments advanced during the hearing on June 6, 2019. For the reasons stated on the record that day, as well as those that follow, Defendant Kluk's motion for summary judgment is granted.

**I. Background**

On August 27, 2015, Plaintiff Krisha Smith ("Smith") was arrested at her home for obstructing the arrest of her son, Ryan Smith. The arrest is fully captured on video by the body cameras of Voorhees Township Police Officers Jack Kluk and Michael Perez. Def.'s Exs. B and C respectively. Smith filed a Third Amended Complaint against Defendants Officer Kenneth Fowlkes, Detective Michael Perez, and Officer Jack Kluk alleging violations under 42 U.S.C. §1983 and the New Jersey Civil Rights Act, as well as a tort claim for false arrest/imprisonment. [Dkt. No. 21].

1

By way of consent order filed on January 29, 2018, Smith dismissed all causes of action against Defendants Officer Kenneth Fowlkes and Detective Michael Perez, dismissing Counts I, III, IV, VI, and VII. [Dkt. No. 23]. As a result, the only remaining claims in this matter allege excessive force in violation of 42 U.S.C. §1983 and the New Jersey Civil Rights Act (Counts II and V) against Officer Jack Kluk.   In addition to compensatory damages, Smith is seeking punitive damages.

Plaintiff Smith claims that Defendant Kluk "yanked [her] arm back" during his attempt to place handcuffs on her to effectuate the arrest. Smith Dep., 20:10-11. During oral argument, counsel for Smith conceded that the video of Smith's arrest, as depicted by Kluk's body camera, does not depict the use of excessive force. Instead, Smith claims that the "yank" which forms the basis for the excessive force occurred during a 2 second portion of the video, at 16.26:12- 16.26:14 where Smith's right shoulder is not captured on screen.   According to Smith, when her left arm was secured, her right arm was yanked, causing a tear of her rotator cuff.

Based on this argument, the only issue before the Court is whether a reasonable juror could believe, based on the video depiction of the arrest, that an injury occurred to Smith as a result of the use of excessive force deployed by Kluk during the two second period Smith describes.

## II. Standards of Review

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.   <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing <u>Celotex Corp. v.</u>

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Smith's constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

Every person who, under color of any statute, ordinance, regulation,

> custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989). Plaintiff alleges a violation of her Fourth Amendment rights and there is no dispute that Kluk was operating under color of state law.

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483,

492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.) Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

### III. Analysis

The issue here is whether Kluk's alleged use of force was reasonable under the circumstances. A Fourth Amendment excessive force claim, under 42 U.S.C. §1983, calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him.1 Graham v. Conner, 490 U.S. 386, 397 (1989). While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. at 396, 109 S. Ct. at 1872; see also Groman, 47 F.3d at 634. "The calculus of reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments—in circumstances that

---

1 Smith also alleges that the Kluk violated the New Jersey Civil Rights Act. "The NJCRA is interpreted as analogous to § 1983," Szemple v. Correctional Med. Servs., Inc., 493 Fed. Appx. 238, 241 (3d Cir. 2012), and a court "will analyze ... NJCRA claims through the lens of § 1983." Trafton v. City of Woodbury, 799 F.Supp.2d 417, 444 (D.N.J. 2011); see Estate of Martin v. U.S. Marshals Serv. Agents, 649 Fed. Appx. 239, 245 n.4 (3d Cir. 2016) (holding that "it appears undisputed that Plaintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as ... [the] federal causes of action [under Section 1983]").

6

are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.' " Id. at 396–97, 109 S. Ct. at 1871–73; see also Sharrar, 128 F.3d at 820–21. In a claim for excessive force, "the central question is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.' " Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396). See also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

Smith claims that Kluk "yanked" or "swiped" her arms back in a "rough fashion" and applied handcuffs "too tightly" during her arrest on August 27, 2015. Smith Dep. 20:5-22:10, 23:5-24:25, Amend Compl., ¶¶ 38-41; Def.'s Stat. Mat. Facts ¶¶ 67-73. The video in this case does not support Smith's assessment. See Def.'s Exs. B. and C., Perez' and Kluk's Body Cameras, respectively. The video captured by the body camera worn by Officer Michael Perez ("Perez"), depicts a scene inside Smith's home. Def.'s Ex. B. Several police officers can be seen as well as Smith and her son. The audio portion of the camera captures Perez telling Smith she is going to be arrested approximately eighteen seconds after the camera begins rolling. Ex. B. at :18. The environment inside the home is tense, as Smith questions whether the police have a warrant. The Perez video ends after Smith's son is arrested and lead out of the house. Id.

Kluk's video begins outside of the home. This video depicts a verbally heated

environment; both Smith and Kluk are speaking with elevated voices in hostile tones. Def.'s Ex. C. As Kluk moves toward Smith to arrest her, other officers can be heard telling Smith she is being arrested and Smith is repeatedly screaming "you cannot lock me up, you can't do that." Id. at 16.26:06. Smith retreats, but ultimately Kluk meets her at the threshold of her house. Id.

The critical part of the Kluk video begins when Kluk's hands enter the picture; you can see handcuffs in his left hand and his open right hand. Both hands are reaching out toward Smith. Id. at 16.26:07. Smith steps back, but continues to face Kluk. Then she turns, causing her left side to be close to Kluk and her right side is a step back angled toward the house. Id. at 16.26:08. At this point, you can see Kluk's right hand making contact with Smith's left arm and the handcuff and Smith's left hand are also visible.

Over the course of the next two seconds, Smith lifts her arms and backs away from Kluk. Id. at 16.26:09-10. There is no contact at this point. Then, Smith places her left hand behind her back, avoiding the outstretched hand of Kluk. Id. at 16.26:11-12. Smith continues to face Kluk and her right arm is stretched out, in a manner almost perpendicular to the ground. Id. Over the next two seconds, Kluk attempts to grab Smith's left arm. She lifts both arms and then thrusts them down countering Kluk's attempt to grab her arm to place the cuff. Id. at 16.26:13-14. However, Kluk maintains a grip on the left arm and places the handcuff on the left wrist. Id. at 16.26:14-20. Then Smith turns around and moves her right arm behind her back in a voluntary manner. The cuffs are applied. Id.

Smith is escorted to the police car and walks on her own. During the nearly three minutes between being handcuffed, walking to the police car and struggling to get in the

8

police car, Smith never complains to Kluk or anyone else escorting her to the car of any pain or discomfort resulting from the handcuffs or the alleged "rough handling." Id. at 16.26:20- 16.28:34. At this point, Kluk leaves the scene to retrieve his patrol car. When he returns with the car, Smith is seen being placed in different handcuffs and verbalizes that she has a torn shoulder. "I'm telling you I tore my shoulder[.]" Id. at 16.29:55-16.30:00. She does not relate the torn shoulder to the circumstances of her arrest. Id.

The Court finds that the force used to arrest Smith was objectively reasonable under the circumstances. The Court has reviewed the video evidence in a manner giving every inference to Smith. There is no indication that excessive force was deployed by Kluk and based upon what can be seen both before and after the two second period, Smith's claim that the force occurs outside the scope of the camera is unavailing. Her position before the alleged force is deployed plus her reaction to the alleged force, which is captured on video, belies any mishandling or forceful contact that is beyond the scope required to make the arrest.

In addition, during the course of both the Perez and Kluk videos, Smith is verbally and physically objecting to the ability of the police to arrest her and continually evades their attempts to place her under arrest. She walks away, turns, and hides her arm behind her back. The Court's review of the video does not reveal the use of unnecessary or objectively unreasonable force to arrest Smith. In fact, the Court does not see any force beyond the small scuffle created by Smith's flailing arms to disengage Kluk's grip. Ex. C. 16.26:13-14. Even if that force could be attributed to Kluk, the Court finds that is proportionate to that needed to effectuate the arrest. In sum, the video does

not demonstrate the use of excessive force, even in the two second period where Smith's right shoulder is out of view.

Taking the totality of the videos into consideration, no reasonable juror could conclude that excessive force occurred during the two second period identified by Smith. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v.Harris, 550 U.S. 378, 380 (2007) (granting summary judgment in excessive force case where Smith's version of events was "so utterly discredited" by the videotape of the incident that "no reasonable jury could have believed him"). Moreover, the fact that Smith may have sustained an injury during the course of the arrest does not, without more, create a triable issue as to excessive force. See, Wheeler v. City of Philadelphia, 367 F. Fupp.2d 737 (E.D. Pa. 2005); see also, Brothers v. Zoss, 837 F.3d 513 (5th Cir. 2016); see also, Ayala v. Wolfe, 546 F. App'x 197 (4th Cir Nov. 13, 2013). For these reasons, summary judgment is granted.

## IV. Conclusion

For the reasons stated herein, summary judgment is granted in favor of Defendant Jack Kluk. An appropriate Order shall issue.


Dated: June 10, 2019

                                             s/ Joseph H. Rodriguez
                                             Hon. Joseph H. Rodriguez,
                                             UNITED STATES DISTRICT JUDGE